E. B. WEISS, Plaintiff-Appellee,

v.

R. C. LEHMAN and Wayne LaRue, Defendants-Appellants.

No. 79–4101.

United States Court of Appeals, Ninth Circuit.

Submitted Dec. 22, 1981.

Decided May 12, 1982.

Rehearing Denied June 28, 1982.

Alfred Mollin, Washington, D. C., argued, for defendants-appellants; M. Karl Shurtliff, Boise, Idaho, Patricia G. Reeves, Barbara L. Herwig, Katherine S. Gruenheck, Washington, D. C., on brief.

Barry Marcus, Marcus & Marcus, Boise, Idaho, for plaintiff-appellee.

Before VAN DUSEN,* FARRIS and BOOCHEVER, Circuit Judges.

FARRIS, Circuit Judge:

We consider this case for a second time on remand from the Supreme Court for reconsideration in light of *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

The sole issue in our initial decision, 642 F.2d 265 (1981), was whether a *Bivens*-type damage remedy had been properly implied against defendant Lehman, a Forest Service employee, to remedy a violation of plaintiff Weiss' rights under the Fifth Amendment Due Process Clause.[1] In light of *Parratt*, we now consider the threshold issue, not raised in the first appeal, whether plaintiff Weiss' due process rights in fact were violated.

Weiss' claim arises out of the destruction of certain equipment and metal objects, consisting principally of three collapsed bus bodies, a metal box, eight empty barrels, and some refrigerators and stoves, which were left unattended on an unpatented mining claim on federal land for six years. Lehman disposed of the property as part of a clean up exercise. Weiss filed suit, however, asserting an ownership interest in the property, and claiming that its destruction was a violation of his Fifth Amendment due process rights. Weiss claimed that one of the mine claimants had traded the property to him in exchange for a lease on a dredge at another mining site. Weiss' ownership interest was not recorded, and Weiss did not claim that Lehman or any other Forest Service employee had actual knowledge of Weiss' interest. Nor did Weiss allege that Lehman acted with the intent to destroy property known or thought to belong to another person.

*Parratt* involved the negligent loss of a prison inmate's mail order hobby kit. Proceeding against various prison officials under 42 U.S.C. § 1983, the prison inmate claimed that he had been deprived of his property without due process of law in violation of the Fourteenth Amendment. The Supreme Court found no due process violation.

*Parratt* states that

either the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process

---

* Honorable Francis L. Van Dusen, Senior United States Circuit Judge, for the Third Circuit, sitting by designation.

1. Finding neither "special factors counselling hesitation" nor an "equally effective alternative remedy," we affirmed. Our decision was vacated. —— U.S. ——, 102 S.Ct. 80, 70 L.Ed.2d 76 (1981).

can, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, satisfy the requirements of procedural due process.

*Id.* at 539, 101 S.Ct. at 1915.

Here there was no need for quick action. Our task, then, is to decide whether meaningful predeprivation process was impractical and an adequate postdeprivation remedy was available. If so, Weiss did not suffer a deprivation of his property without due process of law.

■ We find, however, that we cannot determine from the limited record before us whether meaningful predeprivation process was impractical. Weiss' allegations, and the evidence offered in their support, permit a conclusion that Lehman acted no worse than negligently with respect to Weiss' ownership interest. Weiss argues that the deprivation would not have occurred had Lehman followed proper Forest Service procedures for the destruction of personal property. See 36 C.F.R. § 262.4, which provides for impoundment and disposition of personal property after notice to the owner, or if the name and address of the owner are unknown, then after specified public notice. Since removal of mere debris, such as an old, rusty car body thought to be abandoned and worthless, would not require compliance with 36 C.F.R. § 262.4, the asserted failure to comply here, based on the evidence in the record, would appear to have been no more than a negligent oversight. If there was merely a negligent departure from proper procedures, then such failure to follow procedures was no less "random and unauthorized" than the departure from procedure by the prison officials in *Parratt.* Under such circumstances, meaningful predeprivation process would be impractical for the same reasons that it was not practical for the prison officials in *Parratt* to provide a hearing prior to the tortious loss of the prison inmate's property. *See id.* at 541, 101 S.Ct. at 1915.

■■ As in *Parratt,* Weiss does not argue that the Forest Service procedures themselves are defective. The Forest Service is not and cannot be expected to publish notice before destroying abandoned and worthless property. Nor can the Forest Service reasonably be expected to provide notice before negligently departing from proper procedures by destroying property erroneously believed to be abandoned and worthless.

■ The second requirement of *Parratt* is more clearly satisfied. Weiss had an adequate alternative remedy under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680.

■ Weiss' attempt to fit Lehman's conduct into the "discretionary function or duty" exception to liability, 28 U.S.C. § 2680(a), fails. "The distinction generally made in the application of the discretionary function exemption is between those decisions which are made on a policy or planning level, as opposed to those made on an operational level." *Thompson v. United States,* 592 F.2d 1104, 1111 (9th Cir. 1979). *See Lindgren v. United States,* 665 F.2d 978, 980 (9th Cir. 1982) (quoting *Thompson v. United States). Cf. Blessing v. United States,* 447 F.Supp. 1160 (E.D.Pa.1978). Here, Lehman's conduct was on the operational level rather than the planning level. *See Hatahley v. United States,* 351 U.S. 173, 76 S.Ct. 745, 100 L.Ed. 1065 (1956). In *Hatahley,* Navajo Indians sued under the Federal Tort Claims Act to recover for the wrongful destruction of their horses. The horses had been grazing on public lands of the United States when they were seized. Federal agents failed to comply with notice requirements specified by the Federal Range Code before destroying the horses. The government's reliance on § 2860(a) as a bar to liability was rejected. *Id.* at 181, 76 S.Ct. at 751.

The result in *Parratt* avoided trivializing the Fourteenth Amendment.

To accept respondent's argument that the conduct of the state officials in this case constituted a violation of the Fourteenth Amendment would almost necessarily result in turning every alleged injury which may have been inflicted by a state official acting under "color of law" into a

violation of the Fourteenth Amendment cognizable under § 1983. It is hard to perceive any logical stopping place to such a line of reasoning. Presumably, under this rationale any party who is involved in nothing more than an automobile accident with a state official could allege a constitutional violation under § 1983. Such reasoning "would make the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the states." *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405. We do not think that the drafters of the Fourteenth Amendment intended the amendment to play such a role in our society. *Id.* at 544, 101 S.Ct. at 1917. To permit the jury in this case to find a due process violation based solely on mere negligence would be inconsistent with the more limited role of the Due Process Clause contemplated by *Parratt.*

The judgment in favor of Weiss is vacated. On remand, Weiss should have the opportunity to pursue a due process claim by showing additional facts, such as an intentional destruction of his property interest, that would make the *Parratt* limitation inapplicable.[2]

Vacated and Remanded for further proceedings consistent with this opinion.

BOOCHEVER, Circuit Judge, dissenting:

I do not share the majority's belief that our original decision in this case (642 F.2d 265 [9th Cir. 1981]) is incorrect in light of *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

I

BACKGROUND

Under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), as interpreted in *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) and *Davis v. Passman*, 442 U.S. 228, 245–48, 99 S.Ct. 2264, 2277–78, 60 L.Ed.2d 846 (1979), a plaintiff injured by a federal employee's violation of the plaintiff's constitutional rights is entitled to recover money damages when there is neither a special factor counselling hesitation nor an equally effective alternative remedy. *Bivens*, 403 U.S. at 396–97, 91 S.Ct. at 2004–05. In our original decision, we affirmed the jury verdict and award of damages for Weiss because neither of the above limitations on a *Bivens* action were present.

We found no reason to "hesitate" in implying a damage remedy because Lehman "was adequately protected by the availability at trial of a qualified immunity defense." 642 F.2d at 267. Indeed, the case was tried to the jury on the issue of whether Lehman was entitled to qualified immunity. There was sharply disputed evidence regarding the nature and value of the destroyed property.[1] Clearly implicit in the jury's verdict for Weiss, that was made after jury instructions to which no objection has been raised on appeal,[2] are findings that the property

---

**2.** We do not decide now whether a due process violation could be predicated on acts greater than negligence but less than intentional conduct.

> The intent question cannot be given "a uniform answer across the entire spectrum of conceivable constitutional violations which might be the subject of a § 1983 action," *Baker v. McCollan*, 443 U.S. 137, 139–140, 99 S.Ct. 2689, 2692–2693, 61 L.Ed.2d 433 (1979). Rather, we must give close attention to the nature of the particular constitutional violation asserted in determining whether intent is a necessary element of such a violation. *Parratt*, 451 U.S. at 547–48, 101 S.Ct. at 1919 (Powell, J., concurring).

**1.** Weiss introduced evidence, including photographs and the testimony of several witnesses, showing that the property included valuable mining equipment and parts. The record also contains disputed evidence regarding whether Weiss failed to remove the property because the road to it was unusable or because the property was worthless.

**2.** The jury was instructed that Lehman was protected by qualified immunity if, *inter alia*, "there existed reasonable grounds for the belief that the action taken was appropriate" and Lehman "acted in good faith." The court explained that "good faith" meant that Lehman:

> had an honest belief, after a reasonable investigation of the facts, that [his] action was a proper exercise of [his] authority; and that

had value and that Lehman's actions were not entitled to qualified immunity. In *Butz v. Economou*, 438 U.S. 478, 505–07, 98 S.Ct. 2894, 2910–11, 57 L.Ed.2d 895 (1978), the Court held that an official was protected by qualified immunity unless he knew or should have known that his conduct was unlawful. We were not "hesitant" in our original decision in implying a *Bivens* remedy because the qualified immunity defense meant that Lehman was not being held individually accountable for "mere mistakes in judgment." *Id.* at 507, 91 S.Ct. at 2911. Nevertheless, as discussed more fully below, the majority, in its attempt to bring this case within *Parratt's* scope, ignores the jury's fact-finding role and infers that the property was valueless debris that Lehman "acted no worse than negligently" in destroying. Majority at 1322.

We also held in our initial decision that the Tucker Act and the Fifth Amendment did not offer Weiss the sort of equally effective alternative remedy that precludes bringing a *Bivens* action. We noted that, in light of *Carlson v. Green*, Lehman had abandoned his claim that the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2680, afforded an adequate alternative remedy. 642 F.2d at 266 n.2. I believe that *Carlson* rather than *Parratt* is the controlling precedent here, and that, even if *Parratt* were applicable, the majority errs in applying the standards set forth therein.

II

*Carlson* and *Parratt*

In *Carlson*, the plaintiff brought a *Bivens* action alleging that a federal prison official had violated her deceased son's constitutional rights by failing to provide proper medical attention. The Court discussed at length whether the plaintiff's available remedy under the FTCA precluded her from bringing a *Bivens* action. After reviewing the Congressional comments ac-

companying the 1974 amendments to the FTCA, the Court concluded that it was "crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action." 446 U.S. at 20, 100 S.Ct. at 1472. The Court went on to hold that, in the absence of an explicit expression from Congress to the contrary, a victim of wrongdoing by a federal official has an action against the Government under the FTCA as well as a *Bivens* action against the individual official.

In contrast to *Carlson* and the present case, *Parratt* turned on whether the availability of a fully adequate state remedy precluded a plaintiff from bringing an action under 42 U.S.C. § 1983 against a state prison official for the negligent loss of property. It was undisputed in *Parratt* that the state official was at worst negligent and that the plaintiff could have been fully compensated through his available state remedies. 451 U.S. at 537, 543–44, 101 S.Ct. at 1916–17.

The alternative-remedy issue in *Parratt* was not, as in *Carlson* and the present case, which of two federal remedies should have been pursued by a victim of a federal official's intentional tort, but, rather, whether negligent actions by state officials are actionable under § 1983 (where no pre-deprivation notice is practical) if the state provides an adequate remedy. The focus in *Parratt* was on whether a federally actionable due process violation had occurred. The issues in *Carlson* and the present case are completely different. The availability of a FTCA remedy, as "a parallel, complementary" alternative to a *Bivens* action, *Carlson*, 446 U.S. at 20, 100 S.Ct. at 1472, does not make Lehman's conduct any less of a violation of Weiss Fifth Amendment rights. The alternative state remedy was significant in *Parratt* because without it there would have been a federally actionable due

[he] acted without any motivation of malice, ill will, anger, revenge, personal animosity, or the like; and, further, that [his] action was not taken with a careless disregard of the rights of any person affected.
The jury was further instructed that it must find for Lehman: (a) unless he destroyed the

property knowingly, voluntarily, and intentionally and not because of a reasonable mistake or accident; (b) if he "were merely abating or removing exposed or insanitary refuse or valueless debris;" or (c) he acted within the bounds of his lawful authority.

process violation. In contrast, the question in this case turns on whether the availability of alternative remedies precluded a *Bivens* action. There is no question but that all the various post-deprivation procedures—*i.e., Bivens*, FTCA, and Tucker Act actions—satisfy due process.

One clear indication of how distinguishable *Parratt* is from the situation in *Carlson* and the present case is the fact that neither *Bivens* nor *Carlson* were even mentioned in *Parratt*. Five Justices filed concurring opinions in *Parratt*, in which they emphasized, *inter alia*, the narrow scope of the Court's holding. The concurring Justices emphasize that *Parratt* turns on whether unintentional acts by state officials should be actionable in federal court under the Due Process Clause. *See, e.g.,* 451 U.S. at 545–46, 547, 101 S.Ct. at 1917–18, 1919. For example, Justice Powell cautions that the Due Process Clause should not become a vehicle for federal litigation of state torts under § 1983, "a statute that already has burst its historical bounds." *Id.* at 549 n.7, 550–52, 554, 101 S.Ct. at 1920 n.7, 1921, 1923. These concerns are inapposite to whether the availability of an alternative federal remedy precluded Weiss from bringing a *Bivens* action against Lehman.

### III

#### The *Parratt* Test

Even if the *Parratt* test were applicable here, I would reach a different result from the majority in applying it. I believe that there was a practical means of affording pre-deprivation process and that no meaningful alternative to a *Bivens* remedy existed after the taking.

First, this is not the type of case where it was impractical to provide meaningful pre-deprivation process. In *Parratt*, the claim was made against supervisory prison officials to recover the value of materials lost due to the negligent failure of subordinates to follow normal procedures in handling mail. Because the officials had no way of knowing in advance that the subordinates would mishandle the mail, it was impossible to provide pre-deprivation process. In contrast, Lehman, in his capacity as the manager of the Forest Service Ranger Station that performed the clean-up operation, made a deliberate decision not to publish notice before destroying Weiss' property. There was ample opportunity to give notice had Lehman correctly evaluated the status of the property. Although there was not the type of impracticality here as existed in *Parratt*, it still may be argued that, once the decision was made that the property was abandoned and valueless, it was impractical to publish notice. This is far from the type of "random and unauthorized" conduct that made notice impractical in *Parratt*. 451 U.S. at 541, 546, 101 S.Ct. at 1915, 1918. Here, Lehman, the supervising official, made a deliberate pre-deprivation decision, which the jury found to be unreasonably wrong, that the notice provisions should be dispensed with.

Second, I also question whether the FTCA is a "meaningful means" by which to assess the propriety of Lehman's action. *Parratt*, 451 U.S. at 539, 101 S.Ct. at 1915. In my opinion, the FTCA would be a "highly questionable" as opposed to a "meaningful" means because of the Act's discretionary function exemption.[3] The majority relies principally on the case of *Hatahley v. United States*, 351 U.S. 173, 76 S.Ct. 745, 100 L.Ed. 1065 (1956) in contending that Lehman's acts do not fall within the discre-

---

**3.** Section 2680(a) of the Federal Tort Claims Act provides that liability should not be imposed on the basis of "the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." This discretionary function exception has presented interpretive problems from the time of its enactment. The principal difficulty is simply that all federal employees exercise a certain amount of discretion in the discharge of

their duties. Courts have responded to the need to draw the elusive line between protected and unprotected activities by fashioning various tests such as the "planning-operational test," the "good Samaritan" test, and the balancing-of-policy-factors test. *See generally Caban v. United States*, 671 F.2d 1230 (2d Cir. 1982). Under any of these tests, I feel it is highly questionable whether Weiss would have an action against the Government under the FTCA.

**1326**

tionary function exemption. In that case, however, it was undisputed that the Government officials knew the identity of the owners of the horses they destroyed, yet failed to give notice required by the appropriate federal regulations. The Court stated:

> We are here not concerned with any problem of a "discretionary function" under the Act, see *Dalehite v. United States*, [346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427]. These acts were wrongful trespasses not involving discretion on the part of the agents, and they do give rise to a claim compensable under the Federal Tort Claims Act.

351 U.S. at 181, 76 S.Ct. at 752.

Had Weiss pursued this action under the FTCA, the Government would certainly have argued that Lehman's decision that notice was unnecessary because the property was abandoned and valueless constituted an act of discretion. Although not airtight, such an argument would have substantial merit. *See Dalehite v. United States*, 346 U.S. 15, 35–36, 73 S.Ct. 956, 967–968, 97 L.Ed. 1427 (1953); *Martin v. United States*, 546 F.2d 1355 (9th Cir. 1976), *cert. denied*, 432 U.S. 906, 97 S.Ct. 2950, 53 L.Ed.2d 1078 (1977); *Youngstrom v. Dunn*, 447 F.2d 948 (8th Cir. 1971) (per curiam); *United States v. Delta Industries, Inc.*, 275 F.Supp. 934 (N.D.Ohio 1966). The FTCA provides that judgment in a tort claims action "shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the Government whose act or omission gave rise to the claim." 28 U.S.C. § 2676. Thus, by filing under the FTCA, Weiss would have taken a substantial chance of losing because of the discretionary function exception and of being barred from bringing a subsequent action. Under these circumstances, so fragile a remedy as the FTCA is not a meaningful means to assess the propriety of Lehman's actions.

For all the reasons discussed, I would adhere to Judge Farris' original opinion.