**Rollin FROST, Plaintiff,**

v.

**CITY AND COUNTY OF HONOLULU,
et al., Defendants.**

**Civ. No. 83–1169.**

United States District Court,
D. Hawaii.

April 13, 1984.

Edward C. Kemper, and American Civil Liberties Union of Hawaii, Honolulu, Hawaii, for plaintiff.

Gary M. Slovin, Corp. Counsel, Lawrence R. White, Deputy Corp. Counsel, City and County of Honolulu, Honolulu, Hawaii, for defendants.

## ORDER DENYING MOTION TO DISMISS

FONG, District Judge.

Plaintiff Rollin Frost filed a complaint on November 4, 1983 claiming damages under 42 U.S.C. § 1983 and the pendant jurisdiction of this court.

Frost alleges that on or about January 15, 1982, defendant police officers Kenneth Ikehara and John Doe I arrived at his home in response to a telephone call from his wife. Though the officers tried to prevent him, Frost made his way into the house, whereafter he was forced to the floor and handcuffed. Frost then claims that, while on the floor, he was severely beaten and kicked without provocation, and choked to unconsciousness twice. As a result of this beating, he suffered a broken elbow, broken ribs, contusions on the stomach and side, and facial abrasions. Subsequently, Frost was "booked," but because of his injuries was taken to the hospital for treatment and corrective surgery. Frost was never prosecuted for any crime.

Frost further claims that the City and County of Honolulu was negligent in the hiring, training, and supervision of the defendant police officers alleging that even though Officer Ikehara was involved in other incidents of misconduct, the City and County of Honolulu continued his employment.

Defendants have moved to dismiss the complaint for failure to state a claim upon which relief can be granted, arguing that even if the facts alleged were true, existing state tort remedies provide all the process that is his due under the Fourteenth Amendment. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Rutledge v. Arizona Bd. of Regents*, 660 F.2d 1345 (9th Cir.1981), *aff'd on other grounds sub nom. Kush v. Rutledge*, 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983). Alternatively, defendants maintain that the complaint should be dismissed because it is vague and conclusory.

I

The issue before this court is whether an individual who is intentionally beaten by police without provocation can maintain an action under 42 U.S.C. § 1983 when he also has recourse to state tort remedies.

The enigmatic plurality and concurring opinions that comprise *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), have spawned much diverse commentary. *Parratt* involved the negligent loss of an inmate's $23.50 hobby kit by prison officials. The inmate, Taylor, sued under 42 U.S.C. § 1983 claiming damages. While recognizing that Taylor's claim met the three prerequisites of a valid due process claim (the prison officials acted under color of state law, the hobby kit was property, and the loss, though negligent, was a deprivation), the Supreme Court found that the Nebraska tort remedies provided adequate postdeprivation process to satisfy the requirements of "procedural due process." *Parratt*, 451 U.S. at 537, 101 S.Ct. at 1914. The plurality reasoned that where the loss of property was the result of "a random and unauthorized act by a state employee,"

and a predeprivation hearing was therefore impractical or impossible, the court will look to the adequacy of state postdeprivation process in order to determine whether the deprivation fails to comport with the Due Process Clause of the Fourteenth Amendment. *Id.* at 541, 101 S.Ct. at 1916.

*Parratt* is responsive to the ever rising tide of more or less frivolous section 1983 claims that threatens to inundate the province of traditional Fourteenth Amendment protections. It bespeaks the Court's intention to retrench the boundaries of due process protection, but gives little indication just where the new lines will be drawn. Justice Marshall, concurring and dissenting, argues that *Parratt* is limited to negligent deprivations of property, though there is little in the plurality's opinion or reasoning that would require such a limitation. *Id.* at 555, 101 S.Ct. at 1923. Justices Blackmun and White, who agree with Justice Marshall's construction of *Parratt's* scope, further argue "that there are certain governmental actions that, even if undertaken with a full panoply of procedural protection, are, in and of themselves, antithetical to fundamental notions of due process." *Id.* at 545, 101 S.Ct. at 1918. Justice Powell, concurring only in the result, also expressed concern about the scope of the plurality's opinion, maintaining that substantive due process limitations on state action may extend to intentional deprivations of property and liberty "even where compensation is available under state law." *Id.* at 553, 101 S.Ct. at 1922. Justice Stewart, like the plurality, is silent with respect to the proper scope of the opinion. *Id.* at 544–5, 101 S.Ct. at 1917–18.

In *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), the Supreme Court addressed, albeit obliquely, the scope of *Parratt.* In *Logan,* the issue was whether the plaintiff had been deprived of a state-created property interest without due process. Logan had filed a timely employment discrimination claim with a state commission but the commission had failed to convene the required employer-employee conference within the 120-day period specified by statute, thus causing the forfeiture of her claim. Responding to the employer's argument that, under *Parratt,* a state tort action against the agency provided that employee all the process due her, the Court emphasized that *Parratt* dealt with a "random and unauthorized" act by a state employee, whereas, in *Logan,* the plaintiff was challenging an "established state procedure." *Logan,* 455 U.S. at 436, 102 S.Ct. at 1158. The Court went on to say that *"Parratt* was not designed to reach such a situation," citing with approval the *Parratt* concurring opinion of Justices Blackmun and White. *Id.* Though the Court did not say to just what extent it was adopting this concurring opinion, the implication is clear: *Parratt* does not automatically bar all section 1983 claims merely because predeprivation hearings are impractical and the state provides a remedy through the "lengthy and speculative process" of an independent tort action. *Id.* at 437, 102 S.Ct. at 1158.

Though there have been many opinions construing the scope of *Parratt,* the issue remains unsettled in this circuit. *See Haygood v. Younger,* 718 F.2d 1472, 1479 (9th Cir.1983); *Bretz v. Kelman,* 722 F.2d 503, 507 n. 1 (9th Cir.1983) (Fletcher, J., dissenting). Many opinions are fully irreconcilable. One line of cases, *Rutledge* and its progeny, would extend *Parratt* to virtually every conceivable deprivation of liberty or property so long as a predeprivation hearing is impractical and the state provides post deprivation tort remedies. *See Rutledge v. Arizona Bd. of Regents,* 660 F.2d 1345 (9th Cir.1981), *aff'd on other grounds sub nom. Kush v. Rutledge,* 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983); *Haygood v. Younger,* 718 F.2d 1472 (9th Cir. 1983) (following *Rutledge*); and *Bretz v. Kelman,* 722 F.2d 503 (9th Cir.1983) (following *Rutledge*). Other cases sharply limit *Parratt's* application. *Piatt v. MacDougall,* 723 F.2d 721 (9th Cir.1984) (application of *Parratt* limited to negligent deprivations); *and Wakinekona v. Olim,* 664 F.2d 708 (9th Cir.1981) (*Parratt* limited to negligent deprivations of property) *rev'd*

*on other grounds,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983).

The *Rutledge* court, ostensibly relying on *Parratt,* held that a football coach's alleged assault and battery of a scholarship athlete failed to state a section 1983 claim because the alleged deprivation of liberty "was not, nor could have been, accompanied by a predeprivation hearing." *Rutledge,* 660 F.2d at 1352. On the basis of this conclusion, Judge Sneed, writing for the court, went on to characterize the remaining issue as "merely whether the remedies available under Arizona law and in the Arizona courts constitute the postdeprivation hearing required by the Fourteenth Amendment." *Id.*

Judge Sneed again writing for the court, the *Haygood* panel held that an inmate failed to state a claim for relief under section 1983 where the California Adult Authority "miscalculated" his release date and kept him confined after he had completed the sentence imposed upon him. *Haygood,* 718 F.2d at 1477. Once more, the court broadly held *Parratt* applicable "to situations in which process prior to deprivation of liberty would not be feasible or practical." *Id.* at 1480. The *Haygood* panel declined to follow either the Ninth Circuit decision in *Wakinekona v. Olim,* 664 F.2d 708 (9th Cir.1981) *rev'd on other grounds,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983) (decided only two weeks after *Rutledge* ) or the Fifth Circuit opinion in *Brewer v. Blackwell,* 692 F.2d 387 (1982), both of which limit *Parratt* to deprivations of property. Narrowly limiting *Logan* to its facts, the panel apparently was not convinced that the Supreme Court's reference in *Logan* to the *Parratt* concurrence of Justices Blackmun and White required any particular deference. *Haygood,* 718 F.2d at 1479.

The *Rutledge* approach is not without its appeal. It is straightforward and would clear many section 1983 claims from the federal dockets. However, *Rutledge* and its progeny comprise but a portion of the Ninth Circuit case law construing *Parratt v. Taylor.*

In *Wakinekona,* the court held that a state prisoner could maintain an action under section 1983 where state prison regulations governing transfers created a liberty interest and the prisoner alleged that he was deprived of an independent decision maker during the transfer proceedings. The court stated that the general language of *Parratt* "must be read in the context in which it was made, that of a tortious deprivation of property for which the state provides a tort remedy." *Wakinekona,* 664 F.2d at 715. The court further explained that "[a] broader reading ... would remit all § 1983 cases to state courts whenever the conduct complained of violated state law as well as the federal Constitution," thus reading into section 1983 an exhaustion requirement that has already been explicitly rejected by the Supreme Court. *Id.; See Monroe v. Pape,* 365 U.S. 167, 183, 81 S.Ct. 473, 481, 5 L.Ed.2d 492 (1961). The *Haygood* panel rejects this assessment, arguing that *Parratt* does not require exhaustion of state remedies, but instead holds that no constitutional violation ever occurs when the state provides postdeprivation tort remedies. *Haygood,* 718 F.2d at 1480. In other words, *Haygood* stands for the proposition that where a predeprivation hearing is impractical, the mere presence of adequate state tort remedies precludes the finding of a constitutional violation regardless of the nature of the deprivation. or the intentions of the state actor. Though, stated thus, the *Haygood* panel is clearly correct in maintaining that it does not resurrect exhaustion requirements, the distinction provides little solace for the victim of illegal state action who is denied a federal forum in which to vindicate his constitutional rights.

In contrast to *Rutledge* and *Haygood,* other Ninth Circuit decisions specifically hold that *Parratt* is inapplicable to intentional deprivations. *Weiss v. Lehman,* 676 F.2d 1320, 1323 (9th Cir.1982); *Piatt v. MacDougall,* 723 F.2d 721, 729 (9th Cir. 1984); *cf. Keniston v. Roberts,* 717 F.2d 1295, 1301 (9th Cir.1983) (to dismiss claim of intentional deprivation, burden is on the

defendant to establish that a predeprivation hearing is impractical).

In *Weiss,* the owner of property which was left unattended on federal land and was subsequently destroyed sought to recover damages from the Forest Service employee allegedly responsible. The court found the record deficient for purposes of determining whether a predeprivation hearing was impractical, and remanded the matter back to the district court. The court stated that, on remand, if the claimant could show intentional destruction of his property, "that would make the *Parratt* limitation inapplicable." *Weiss,* 676 F.2d at 1323.

The most recent Ninth Circuit opinion construing *Parratt* is *Piatt v. MacDougall, supra. Piatt* involved the claim of a state prisoner for wages earned for certain outside work. After deciding that Arizona statutes created a protected property interest in the earned wages, the court went on to hold *Parratt* inapplicable to intentional deprivations. *Piatt,* 723 F.2d at 729. In addition to relying on *Weiss, Logan,* and the concurring opinion of Justices Blackmun and White in *Parratt,* the court believed that its distinction between intentional and negligent deprivations furthered the deterrent purposes of section 1983, since "[n]egligent conduct cannot be deterred as effectively as intentional conduct." *Id.* at 730. The court concluded that "[a]n *intentional* violation by a state official of [a] right guaranteed by the federal Constitution should be addressed by a *federal* remedy and by a *federal* court." *Id.* (emphasis in original).

In view of the intracircuit conflicts, no single opinion appears to control the disposition of this case. It is clear, however, that *Parratt* does not apply where established state procedures themselves are the alleged cause of the deprivation. *Logan,* 455 U.S. at 436, 102 S.Ct. at 1158. Other relevant factors considered by this court on the present Motion to Dismiss include: 1) whether a property or a liberty interest was infringed, *Wakinekona;* 2) whether the conduct of the state actor was "random

and unauthorized," *Parratt;* and 3) whether the deprivation was intentional or merely negligent, *Weiss* and *Piatt.*

■ In considering a motion to dismiss, this court must assume that the facts set out in the complaint are true. *Walker Process Equip. v. Food Mach. & Chem. Corp.,* 382 U.S. 172, 174, 86 S.Ct. 347, 348, 15 L.Ed.2d 247 (1965); *Brown v. Brown,* 368 F.2d 992, 993 (9th Cir.1966). Among other things, plaintiff alleges that the City and County of Honolulu was negligent in the hiring, supervision, and training of the defendant police officers. This allegation clearly states a claim for section 1983 relief because it challenges established state procedures. *Logan,* 455 U.S. at 436, 102 S.Ct. at 1158. *See also Pantoja v. City of Gonzales,* 538 F.Supp. 335, 338 (N.D.Cal.1982) (allegations of inadequate training of police officers are challenges to established state procedures and thus governed by *Logan* ). However, plaintiff's principal allegation is that he was beaten by police officers acting under color of state law. This allegation does not implicate established state procedures because the offending officers wilfully disregarded those procedures. *Logan,* therefore, is inapplicable to plaintiff's main cause of action.

■ The *Wakinekona* court distinguishes between deprivations of property and liberty, holding that *Parratt* is not applicable to the latter. The *Haygood* court disagrees, arguing that reliance on the *Parratt* concurring opinions is misplaced, and that no persuasive justification for the distinction has been offered. This court finds these two cases irreconcilable, but makes this observation. It is axiomatic that identification of the specific requirements of due process requires, among other factors, consideration of the nature of the affected interest. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *Arnett v. Kennedy,* 416 U.S. 134, 155, 94 S.Ct. 1633, 1644, 40 L.Ed.2d 15 (1974). Implicit in this principle is the recognition that some interests, by their very nature, require more procedural protections than others. Presumably, the

*Wakinekona* court and others who would limit *Parratt* to deprivations of property believe that liberty interests in general require more predeprivation procedural protections than property interests. One reason for this distinction is the sufficiency of the remedy.

The *Parratt* plurality cites eight cases in support of its holding, all concerning deprivations of property. *North American Cold Storage Co. v. Chicago,* 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908) (seizure of food); *Ewing v. Mytinger & Casselberry,* 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950) (seizure of drugs); *Fahey v. Mallonee,* 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947) (seizure of property); *Bowles v. Willingham,* 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892 (1944) (wartime rent control); *Corn Exch. Bank v. Coler,* 280 U.S. 218, 50 S.Ct. 94, 74 L.Ed. 378 (1930) (seizure of property); *McKay v. McInnes,* 279 U.S. 820, 49 S.Ct. 344, 73 L.Ed. 975 (1929) (attachment of property); *Coffin Bros. v. Bennett,* 277 U.S. 29, 48 S.Ct. 422, 72 L.Ed. 768 (1928) (liens on property of stockholders); *Ownbey v. Morgan,* 256 U.S. 94, 41 S.Ct. 433, 65 L.Ed. 837 (1921) (attachment of property). The plurality itself recognizes that deprivations of liberty are arguably "more egregious" than deprivations of property. *Parratt,* 451 U.S. at 542, 101 S.Ct. at 1916. This observation is made with reference to *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977), where the Court, divided 5–4, found that state tort remedies provided adequate postdeprivation process to students who claimed they were unlawfully disciplined through corporal punishment. Although, in *Ingraham,* the Court found that postdeprivation process satisfied the Fourteenth Amendment, it relied heavily on the common law tradition recognizing the right of teachers to inflict corporal punishment. *Id.* at 675–77, 97 S.Ct. at 1414–15. Several dissenting justices commented on the distinction between liberty and property deprivations, observing that "[t]he infliction of physical pain is final and irreparable; it cannot be undone in a subsequent proceeding." *Id.* at 695, 97 S.Ct. at 1425 (White,

J., dissenting). Justice Stevens added, "When only an invasion of a property interest is involved, there is a greater likelihood that an award of damages will make a person completely whole than when an invasion of the individual's interest in freedom from bodily restraint and punishment has occurred." *Id.* at 701, 97 S.Ct. at 1428. Thus there is cause to distinguish deprivations of liberty from deprivations of property. Clearly, there are times when a substantial deprivation of property will appear more egregious than a minimal intrusion on one's liberty, but the fact remains that, in a postdeprivation proceeding, it is easier to make whole a property deprivation than it is to fully compensate a liberty deprivation.

The plaintiff has alleged a severe deprivation of liberty. Unlike the situation in *Ingraham,* there is no common law tradition allowing police officers to punish citizens without a judicial determination of their guilt or innocence. Whereas in this case the affected interest is substantial, and the deprivation grave, and taking into account the difficulty of making the plaintiff whole through means of a tort remedy, this court finds that the Fourteenth Amendment requires a predeprivation hearing.

The issues of intentional versus negligent deprivations and "random and unauthorized" state action are interrelated. The *Parratt* plurality emphasizes the random nature of negligent acts. *Parratt,* 451 U.S. at 541, 101 S.Ct. at 1916. Justices Blackmun and White agree, stating:

While the "random and unauthorized" nature of negligent acts by state employees makes it difficult for the State to "provide a meaningful hearing before the deprivation takes place," [citation omitted] it is rare that the same can be said of intentional acts by state employees. When it is possible for a State to institute procedures to contain and direct the intentional actions of its officials, it should be required, as a matter of due process, to do so. *Id.* at 546, 101 S.Ct. at 1918.

The acts alleged in the complaint did not result from the police officers' negligence. Unlike the inadvertent loss of an inmate's hobby kit where, by the nature of negligence itself, the offending prison official *could not* have anticipated the deprivation, this court is presented with a willful and deliberate abuse of state authority. The officers' actions were not random, and the plaintiff should not have been deprived of his liberty without predeprivation process.

It has been forcefully argued that *Parratt* should be limited to negligent deprivations. There are only two cases in this circuit which have affirmed the dismissal of section 1983 complaints where intentional deprivations were alleged. *Rutledge, supra; Bretz v. Kelman*, 722 F.2d 503 (9th Cir.1983) (dismissing allegations of malicious prosecution). In neither of these two cases did the majority forthrightly address the issue of *Parratt's* application to intentional deprivations. Those courts in this circuit which have specifically addressed the issue of intentional deprivations have come to varying conclusions, but each of these courts recognize that some distinction is proper. *Weiss* and *Piatt* consider intentional deprivations completely outside the scope of *Parratt* while *Keniston v. Roberts* places on the defendant the burden of showing that a predeprivation hearing is impractical when there is a claim of intentional deprivation.

These courts have carefully considered the distinctions between negligent and intentional deprivations. As discussed above, intentional conduct by police officers while on duty is not the same as the "random and unauthorized" conduct of a prison official who negligently loses a prisoner's hobby kit. *Parratt*, 451 U.S. at 546, 101 S.Ct. at 1918 (White, J., concurring). Also, intentional conduct is more readily deterred than negligence. *Piatt*, 723 F.2d at 730. Furthermore, applying *Parratt* to intentional conduct would allow the state actor to deliberately choose when to give a predeprivation hearing and when not to. The potential for abuse is readily apparent. *See generally* Comment, *Due Process and Section 1983: Limiting Parratt v. Taylor to Negligent Conduct*, 71 Cal.L.Rev. 253 (1983)).

Though *Piatt* dealt with property, the conduct of the state actor which gave rise to section 1983 liability is analogous to the facts of the instant case. The court summarized the facts in *Piatt* as follows:

> In this case, Ellis MacDougall, the director of the state prison at Florence, allegedly made an intentional decision to disregard the Arizona Statutes that required payment to prisoners for their services rendered in performing outside work, thereby depriving prisoners of pay to which they were entitled by statute. *Piatt*, 723 F.2d at 729.

In the instant case, police officers allegedly made an intentional decision to disregard their professional obligations as provided for by law and beat the plaintiff, thereby depriving him of his right to be secure in his person from unlawful state action. In both this case and *Piatt* the state actor was in a position of significant public trust, and the federal Constitution cannot close its eyes to the deliberate actions of responsible state officers.

Moreover, though this court finds ample support for its position in the case law discussed above, *Parratt* is inapplicable because it is confined to the issue of *procedural* due process. *Parratt*, 451 U.S. at 537, 101 S.Ct. at 1914 (plurality), 545 (Blackmun, J., concurring), 550 (Powell, J. concurring); *see also Bretz v. Kelman*, 722 F.2d at 505 (Fletcher, J., dissenting); *Duncan v. Poythress*, 657 F.2d 691, 704 (5th Cir.1981), *cert. granted*, 455 U.S. 937, 102 S.Ct. 1426, 71 L.Ed.2d 647 (1982). The deliberate conduct attributed to the defendant police officers in this action is different in kind from the negligent conduct of prison employees, the spontaneous actions of a college football coach, or the inadvertent miscalculation of a prison term by the California Adult Authority. The difference is that the state conduct alleged here violates *substantive* limitations of the Due Process Clause.

State action is said to violate strictures of substantive due process when it "shocks the conscience" or is otherwise offensive to the "concept of ordered liberty." *Rochin v. People of California*, 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952); *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937). Under either test, examples of conduct found to violate substantive due process include: refusal of state to waive court fees for indigents seeking dissolution of their marriages, *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); forcible extraction of narcotics from suspect by probing his mouth and pumping his stomach, *Rochin, supra;* bribery of young child by policeman in order to obtain evidence to be used against the parent, *United States v. Penn*, 647 F.2d 876 (9th Cir. 1980); policeman causing victim of assault, over her objections, to be photographed naked, and then circulating photographs among other officers, *York v. Story*, 324 F.2d 450 (9th Cir.1963); and, failure of draft board to inform draftee seeking conscientious objector classification of his right to obtain disclosure of evidence used to defeat his claim, *Chernekoff v. United States*, 219 F.2d 721 (9th Cir.1955).

The unprovoked savage beating and kicking of a handcuffed person by police officers alleged in the complaint is conduct at least as egregious as the conduct found violative of due process in the authorities discussed above. Accordingly, the court finds that the alleged conduct truly "shocks the conscience" and offends the "concept of ordered liberty," and thus, violates the strictures of substantive due process.

This holding furthers the policy considerations underlying section 1983. Indeed, many courts have concluded that a broader application of *Parratt* would all but emasculate section 1983 as a meaningful remedy. *See e.g. Roman v. City of Richmond*, 570 F.Supp. 1554, 1555 (N.D.Cal.1983); *Howse v. Deberry Correctional Institute*, 537 F.Supp. 1177, 1181 (M.D.Tenn.1982). To reject any conceivable constitutional claim "simply because a state may provide a parallel remedy would render section 1983 meaningless in innumerable cases, for many of our most cherished liberties are analogous to rights for which the states provide remedies of some sort." *Howse*, 537 F.Supp. at 1181.

Police brutality cases are paradigmatic of section 1983. *See* Annot., 60 A.L.R.Fed. 204 (1982). This court is not satisfied that it should abrogate the long tradition of providing a federal forum for such claims without a clearer mandate than can be gleaned from the language of *Parratt.* Certainly, the facts of *Parratt* do not warrant an extension of its holding into an area long recognized to be well within the scope of section 1983 protection. Furthermore, the deterrent purposes of section 1983 seem particularly applicable to cases of police brutality. Given their relative familiarity with the state courts, police may be more effectively deterred from engaging in illegal conduct when threatened with a federal trial than when faced with a state tort action. Indeed, the very purpose of section 1983 was to provide an independent federal remedy to guarantee an impartial adjudication of the claim. *Monroe v. Pape*, 365 U.S. 167, 180, 81 S.Ct. 473, 480, 5 L.Ed.2d 492 (1960).

For all these reasons, the court finds that the Parratt limitation is not applicable to the facts set out in the complaint. Plaintiff has stated a valid claim for relief under 42 U.S.C. § 1983.

## II

■ Defendants also propose that the complaint be dismissed because it is vague and conclusory, citing *Hamrick v. Lewis*, 515 F.Supp. 983 (N.D.Ill.1981). Defendants' reliance on *Hamrick* is misplaced for that opinion holds only that "it is necessary to allege more than a single incident of illegality as evidence of a governmental policy, custom, or practice in order to state a claim for relief." *Id.* at 986. In the instant case, the complaint alleges more than a single incident of misconduct, claiming that Officer Ikehara has had several

complaints filed against him. Where some of the defendants are as yet unidentified, and the proceedings are at such an early stage that there has been little time for discovery, it would be unduly harsh to dismiss the complaint solely because the pleading is less than perfect. Complaints are to be liberally construed when evaluating a motion to dismiss, *Ivey v. Board of Regents of University of Alaska*, 673 F.2d 266, 268 (9th Cir.1982), and the court finds that the complaint filed in the instant action adequately states a claim for relief under section 1983.

Accordingly, IT IS HEREBY ORDERED that defendants' Motion to Dismiss is DENIED.