**Elmer F. KING, Jr., Administrator of the Estate of Elmer F. King III, Elmer F. King, Jr., Barbara L. King, Kelley King and Kimberly King, Plaintiffs,**

v.

**John PACE, Vincent Pretola, Francis York, Lynn Licensing Board, Antonio J. Marino, City of Lynn, George R. McCarthy, Louis K. Cassis, Fletcher Wiley, Studio IV, Inc., John Zaguoras, William Depow, Sr., Anthony Correale, Disabled American Veterans, Lynn Memorial Chapter No. 99, Disabled American Veterans and Chester P. Szczawinski, Defendants.**

**Ralph F. RITCHIE, Administrator of the Estate of Kenneth Ritchie, Ralph Ritchie, Shelia Ritchie, Kimberly Ritchie, Michael Ritchie, and Sandra Ritchie, Plaintiffs,**

v.

**John PACE, Vincent Pretola, Francis York, Lynn Licensing Board, Antonio J. Marino, City of Lynn, George R. McCarthy, Louis K. Cassis, Fletcher Wiley, Studio IV, Inc., John Zaguoras, William DePow, Sr., Anthony Correale, Disabled American Veterans, Lynn Memorial Chapter No. 99, Disabled American Veterans, and Chester P. Szczawinski, Defendants.**

Civ. A. Nos. 83–1755–MA, 83–1756–MA.

United States District Court,
D. Massachusetts.

Nov. 29, 1983.

Edward T. Hinchey, William J. Dailey, Jr., Sloane & Walsh, Boston, Mass., for plaintiffs King and Ritchie.

Nicholas G. Curuby, Lynn, Mass., for defendants Pace, Pretola, York, Lynn Licensing Board, Marino, City of Lynn.

Samuel Vitali, Peralta, Gilligan & Vitali, Lynn, Mass., for defendants Zaguoras and Correale.

Kim E. Murdock, Asst. Atty. Gen., Boston, Mass., for defendant Alcoholic Beverage Com'n.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

The plaintiffs in these matters are the estates and families of two decedents, Ralph F. Ritchie and Elmer F. King, Jr. While the two matters have not been consolidated, the factual and legal issues are the same and are treated in this single memorandum.

In their factual allegations, the plaintiffs state that both decedents, while under the legal drinking age, were served alcoholic beverages at Studio IV, a lounge operated in Lynn, Massachusetts. After becoming intoxicated, the decedents drove into a body of water and subsequently died of injuries sustained. The plaintiffs have brought suit based on 42 U.S.C. § 1983 and the Fourteenth Amendment against: John Pace, Vincent Pretola and Francis York, who together comprise the City of Lynn Licensing Board; the Lynn Licensing Board; Antonio J. Marino, Mayor of Lynn; the City of Lynn; George R. McCarthy, Louis K. Cassis and Fletcher Wiley, who together comprise the Alcoholic Beverages Control Commission of Massachusetts; and the Disabled American Veterans, Lynn Memorial Chapter No. 99, which held Massachusetts and Lynn licenses to sell alcoholic beverages at Studio IV. In their federal law claims, the plaintiffs allege that these defendants, under color of state law, were negligent and/or reckless in their failure to take affirmative action to stop the purchase and consumption of alcoholic beverages by persons under the legal drinking age at Studio IV, having previously received numerous complaints concerning such unlawful activities. The plaintiffs further allege that these defendants knew, or in the reasonable exercise of their official duties should have known, that the foreseeable consequence of their failure to act would be injury or harm to patrons of Studio IV. The plaintiffs also have brought pendent state claims against: Studio IV, Inc.; John Zaguoras, William DePow, Sr. and Anthony Correale, who together own and/or operate Studio IV; Disabled American Veterans, Lynn Memorial Chapter No. 99; Chester P. Szczawinski, owner of the property where Studio IV is located; Mayor Marino; and Alcoholic Beverages Control Commission commissioners McCarthy, Cassis and Wiley. These matters are presently before the Court on various defendants' motions to dismiss and/or for summary judgment.

The sole question presented is whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.

The determination of these questions begins with *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1980). In that case, the Supreme Court attempted to decide whether mere negligence will support a claim for relief under § 1983. The Supreme Court had granted certiorari in two prior cases to decide this question, but in both found it unnecessary to decide the issue. *See Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978), and *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). The Supreme Court noted that these two decisions "have not aided the various Courts of Appeal and District Courts in their struggle to determine the correct manner in which to analyze claims ... which allege facts that are commonly thought to state a claim for a common-law tort normally dealt with by state courts, but instead are couched in terms of a constitutional deprivation and relief is sought under § 1983."

**1388**

451 U.S. at 533, 101 S.Ct. at 1911–12. The Supreme Court commented: "The diversity in approaches is legion." *Id.*

The Supreme Court's analysis began by noting that both *Baker v. McCollan, supra,* and *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), suggest that § 1983 affords its remedy *without* any express requirement of a particular state of mind. 451 U.S. at 535, 101 S.Ct. at 1912. Accordingly, the Supreme Court held that the initial inquiry must focus on whether the two essential elements to a § 1983 claim, listed above, are present.

In *Parratt* the respondent was a prison inmate who ordered by mail certain hobby materials which were lost through the negligence of two employees who worked in the prison hobby center.[1] The respondent brought suit against the Warden and Hobby Manager of the prison, alleging that he had been deprived of property without due process of law. The Supreme Court, finding that the alleged conduct by the petitioners in this case unquestionably satisfied the "under color of state law" requirement, turned its inquiry to the second requirement—whether respondent was deprived of any right, privilege, or immunity secured by the Constitution or laws of the United States. Against that backdrop, I will begin my analysis of the instant cases with this second element, and will discuss the first element in Part II below.

## I. *Deprivation of a Constitutional Right*

In *Parratt,* as in the matter before this Court, the only deprivation alleged was that the decedents' rights under the Fourteenth Amendment were violated; namely, that the decedents were deprived of property without due process of law. Unlike the claims in *Monroe v. Pape, supra* (Fourth Amendment violations) and *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (Eighth Amendment violations), the plaintiffs here refer to no right, privilege, or immunity secured by the Constitution or federal laws other than the Due Process Clause of the Fourteenth Amendment. As the Supreme Court in *Parratt* pointed out: "Nothing in that Amendment protects against all deprivations of life, liberty, or property by the State. The Fourteenth Amendment protects only against deprivations 'without due process of law.' " 451 U.S. at 537, 101 S.Ct. at 1914, *citing* 443 U.S. at 145, 99 S.Ct. at 2695. The Supreme Court therefore declared that the proper inquiry is whether the deprivation was "without due process of law."

The Supreme Court proceeded to cite a number of cases in which it recognized that the normal process of predeprivation notice and an opportunity to be heard is pretermitted if the State provides a postdeprivation remedy. 451 U.S. at 538–39, 101 S.Ct. at 1914–15, *citations omitted.* The Court wrote: "These cases recognize that ... the impracticality of providing any meaningful predeprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, can satisfy the requirements of procedural due process." 451 U.S. at 539, 101 S.Ct. at 1915. The Supreme Court held that postdeprivation process provided sufficient "due process" where the loss was not a result of some established state procedure and the State cannot predict precisely when such loss will occur; in these cases, the State cannot provide a meaningful hearing before the deprivation takes place. Postdeprivation process is also justified where the loss is beyond the control of the State. The Court noted, however, that these cases all rested in part on "the availability of some meaningful opportunity subsequent to the initial taking for a determi-

---

**1.** This Court is well aware of the seeming irony of, in the instant case, applying law developed in a case involving property valued at only $23.50. Nevertheless, the principles and analyses established by *Parratt* have application to deprivations of life, liberty and property in vio-

lation of the Fourteenth Amendment. Only Justice Blackmun would find the Court's analysis in *Parratt* not applicable to cases concerning deprivation of life or liberty. 451 U.S. at 545, 101 S.Ct. at 1917 (Blackmun, J., concurring). To date, *Parratt* has not been so limited.

nation of rights and liabilities." 451 U.S. at 541, 101 S.Ct. at 1916.

The Supreme Court noted with approval the opinion of then Judge Stevens in *Bonner v. Coughlin*, 517 F.2d 1311 (7th Cir. 1975), *modified en banc*, 545 F.2d 565 (1976), *cert. denied*, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978), wherein Justice Stevens recognized that the question was "whether it can be said that the deprivation was 'without due process of law' " and concluded: "[T]he existence of an adequate state remedy to redress the property damage inflicted by state officers avoids the conclusion that there has been any constitutional deprivation of property without due process of law within the meaning of the Fourteenth Amendment." *Id.*, at 1319.

■ The Supreme Court in *Parratt* therefore concluded that the respondent did not allege a violation of the Due Process Clause of the Fourteenth Amendment. The Court noted that the deprivation did not occur as a result of some established state procedure, but rather occurred as the result of the unauthorized failure of state agents to follow established state procedure.[2] There was no contention that the procedures themselves were inadequate or that it was practicable for the state to provide a predeprivation hearing. Most importantly Nebraska provided respondent with the means by which he could receive redress for his tortious loss at the hands of the state. The Court concluded that: "Although the state remedies may not provide the respondent with all the relief which may have been available if he could have proceeded under § 1983, that does not mean that the state remedies are not adequate to satisfy the requirements of due process." 451 U.S. at 544, 101 S.Ct. at 1917.

The Supreme Court also cautioned that accepting the respondent's argument that the conduct of the state officials constituted a Fourteenth Amendment violation would "almost necessarily result in turning every alleged injury which may have been inflicted by a state official acting under 'color of law' into a violation of the Fourteenth Amendment cognizable under § 1983." The Court warned:

> It is hard to perceive any logical stopping place to such a line of reasoning. Presumably, under this rationale any party who is involved in nothing more than an automobile accident with a state official could allege a constitutional violation under § 1983. Such reasoning "would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States." *Paul v. Davis*, 424 U.S. 693, 701 [96 S.Ct. 1155, 1160, 47 L.Ed.2d 405] (1976). We do not think that the drafters of the Fourteenth Amendment intended the Amendment to play such a role in our society.

451 U.S. at 544, 101 S.Ct. at 1917.

■ In the case presently before this Court, it was likewise impracticable, and even impossible, to provide any predeprivation process. Here, the loss was not the result of some established state procedure, and those defendants acting under color of state law could not have predicted when such loss would occur. Furthermore, the loss of life in the instant case was beyond the control of the state. Here, as in the *Parratt* case, state process is available wherein the rights and liabilities of the various parties may be determined. *See* Massachusetts General Laws, c. 138, §§ 36, 69. Therefore, this Court finds that the existence of a state remedy avoids the conclusion that there has been any constitutional deprivation of life *without due process of law* within the meaning of the Fourteenth Amendment. This Court is mindful of the Supreme Court's statement that: "Although the state remedies may not provide the respondent with all the relief which may have been available if he could have proceeded under § 1983, that does not mean that the state remedies are not adequate to satisfy the requirements of due

---

**2.** Proceedings to compel state officials to comply with their statutory or regulatory duties should usually be brought in state courts. *Kelly v. Wyman*, 294 F.Supp. 893 (S.D.N.Y.1968).

process." 451 U.S. at 544, 101 S.Ct. at 1917.

Therefore, with regard to the second element of a § 1983 action—whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States—I find that the plaintiffs have not sufficiently alleged a violation of the Due Process Clause of the Fourteenth Amendment.

## II. *Conduct Committed Under Color of State Law*

Although the plaintiffs' failure to state a claim in violation of the Constitution or laws of the United States is sufficient in itself to dismiss their complaints, in the interests of completeness, I will also address the question of whether the plaintiffs established the first element of a § 1983 action. That is, that the conduct complained of was committed by a person acting under color of state law.

The pertinent portion of § 1983 to this first element is: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or territory, *subjects, or causes to be subjected,* any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured...." 42 U.S.C. § 1983. In *Parratt,* it was clear that the hobby kit was lost through the negligence of the petitioners; in other words, the petitioners subjected the respondent, or caused him to be subjected, to a deprivation. 451 U.S. at 535–36, 101 S.Ct. at 1912–13. In the instant case, however it is not clear that the defendants *subjected* the decedents, or *caused them to be subjected,* to the deprivations.

In the instant case, the defendants are charged with the negligent and/or reckless failure to take affirmative action to stop the purchase and consumption of alcoholic beverages by persons under the legal drinking age. The plaintiffs argue that this failure to take action was the *cause* of the injuries to the decedents. This claim is analogous to that presented in *Ingram v.*

*Dunn,* 383 F.Supp. 1043 (N.D.Ga.1974), *aff'd,* 514 F.2d 1070 (5th Cir.1975). In *Ingram,* the Atlanta Postal Credit Union allegedly engaged in racially discriminatory hiring, promotion, and loan-making practices, to the harm of black citizens. Plaintiffs brought suit against the Georgia Commissioner of the Department of Banking and Finance under § 1983, claiming that the Commissioner's failure to require the surrender of the credit union's charter was the legal cause of the deprivation of their civil rights.

The court in *Ingram* determined that the plaintiffs would not have been subjected to the discrimination if the defendant, in his official capacity, had revoked the charter of the offending credit union. While at first blush it therefore appeared that the complaint successfully asserted state action and discrimination resulting therefrom, the court proceeded to note that the state action must be the *legal cause* of the wrong. 383 F.Supp. at 1045–46.

The court in *Ingram* found that the complaint itself negated any conclusion that the legal cause of the deprivation was the Commissioner's failure to revoke the charter; instead, it appeared from the complaint that the actor in discrimination was the Atlanta Postal Credit Union. The court noted: "No charge is made, and none appears available, that the defendant commissioner caused the Atlanta Postal Credit Union to hire or fire, promote or demote, lend or decline to lend, on the basis of race, creed, or color. Granted that State action is shown to have been directly involved in giving life to the offending corporation, it does not appear that State action of omission or commission caused that corporate entity to engage in the offensive conduct. The legal cause must be the conduct of those in charge of the corporation. *The act of creating or continuing the life of that entity is too remote to support the plaintiff's action."* 383 F.Supp. at 1047 (emphasis supplied). *See also Jennings v. Davis,* 476 F.2d 1271 (8th Cir.1973); *Schweiker v. Gordon,* 442 F.Supp. 1134 (E.D.Pa.1977).

It is clear that claims under § 1983 are to be viewed against the background of tort liability that makes a man responsible for the natural consequences of his actions. *Monroe v. Pape, supra,* 365 U.S. at 187, 81 S.Ct. at 484; *Pierson v. Ray,* 386 U.S. 547, 556, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967); *Whirl v. Kern,* 407 F.2d 781, 788 (5th Cir.1969). In the instant cases, therefore, the plaintiffs must show that the proximate cause of the decedents' injuries was the defendants' breach of a duty owed to the decedents. *See Norton v. McKeon,* 444 F.Supp. 384 (E.D.Pa.1977). The plaintiffs have failed to make this showing. First, it is not clear that these defendants had a duty to ensure that these decedents would not be served alcoholic beverages. Second, these defendants' inaction was not the proximate cause of the decedents' injuries; rather, the injuries were caused by those persons who served alcoholic beverages to the underaged decedents.[3] Although Studio IV could not have served alcoholic beverages absent the licenses from the state and the city, this state action did not *cause* Studio IV to serve these decedents. This state action did not *cause* Studio IV to violate state law prohibitions against serving alcoholic beverages to persons under the legal drinking age or to intoxicated persons. *See* Massachusetts General Laws, c. 138, §§ 36, 69. Nor do the plaintiffs allege that the defendants intentionally allowed potentially injurious conduct to proceed, with deliberate indifference to the possible consequences.[4] In my judgment, the mere act of granting licenses to serve alcoholic beverages is too remote to support a finding of proximate cause necessary to the plaintiffs' claims.[5]

I share the concerns expressed by the court in *Ingram:*

[T]he court finds it difficult to accept the proposition that persons in positions similar to that of the defendant Commissioner are subject to an action of this sort [§ 1983]. The ramifications of such a conclusion are so extensive as to challenge the imagination. Many things are forbidden by the Constitution of the United States and the laws enacted pursuant thereto. Unfortunately, many transgressions are committed by corporate bodies whose existence depends upon a charter granted by a State. If plaintiffs' argument is taken to its logical extension, the Secretary of State would be duty bound to revoke the charter of any corporation that broke any law.

283 F.Supp. at 1045. I cannot find that the defendants acting under color of state law are liable under § 1983 for the injuries sustained by the decedents, merely by their negligent failure to revoke the alcoholic beverages licenses or failure to enforce state laws for the benefit of the decedents.

---

**3.** *Compare Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972) where the Supreme Court held that the Pennsylvania Liquor Control Board's regulatory scheme did not sufficiently implicate the state in Moose Lodge's discriminatory practices, so as to make the equal protection clause applicable. The implication of *Moose Lodge* is that a licensing agency is not the legal cause of discrimination unless some agency regulation requires or fosters the discrimination. Stated otherwise, regulation by itself does not give rise to state action.

**4.** *Compare Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (recognizing cause of action against prison officials for "deliberate indifference" to prisoners' serious medical needs); *Harper v. Cserr,* 544 F.2d 1121 (1st Cir.1976) (district Court previously dismissed, for failure to state a claim, plaintiff's complaint alleging that defendant mental hospital Superintendent's failure to supervise plaintiff's wife's movements or take any steps to prevent her taking her own life violated the due process clause of the Fourteenth Amendment and the prohibition against the infliction of cruel and unusual punishment in the Eighth Amendment; circuit court held that while a voluntary mental patient ordinarily cannot claim a "right to treatment" implicating her Eighth Amendment rights, if the patient was so helpless as to render her a de facto prisoner, her Eighth Amendment rights might be violated by wanton callousness on the part of those caring for her).

**5.** I also note that, unlike the deprivations at issue in *Parratt* and *Ingram,* these cases present issues of the foreseeability of such harm and the contributory negligence of the decedents who chose to operate an automobile while intoxicated. These issues are well suited to a state tort or "dram-shop" action; they are not well suited to a civil rights action.

Were I to find otherwise, the floodgates would open to endless § 1983 claims based on the same tenuous thread of causation. For example, should a plaintiff be able to bring a § 1983 action against the state for injuries sustained through the malpractice of a state-licensed doctor, on the theory that but for the state's failure to revoke the doctor's license such injuries would not have been sustained? I do not believe that Congress intended the civil rights statutes to reach such action.

Therefore, with regard to the first element of a § 1983 action—whether the conduct complained of was committed by a person acting under color of state law—I conclude that the plaintiffs have not sufficiently alleged that the defendants' inaction was the proximate cause of the injuries sustained by the decedents.

### III. *State Law Claims*

Since the civil rights claims against the defendants are dismissed, no federal questions remain for further consideration. Accordingly, I exercise my discretion to decline to hear the state law claims brought by the plaintiffs. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725–27, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218.

### IV. *Conclusion*

For the reasons stated in Parts I and II above, I find that the plaintiffs fail to state a claim for relief under § 1983. I further decline to exercise pendent jurisdiction to hear state claims brought in this action. Accordingly, the plaintiffs' complaint is dismissed.

SO ORDERED.