RICHARD W. TEMPLE[1] *vs.* MARLBOROUGH DIVISION OF THE
DISTRICT COURT DEPARTMENT & others.[2]

Middlesex. February 6, 1985. — June 10, 1985.

Present: HENNESSEY, C.J., WILKINS, LYNCH, & O'CONNOR, JJ.

*Civil Rights,* Availability of remedy. *Due Process of Law,* Mental health.
*Mental Health. Judicial Immunity. Practice, Civil,* Declaratory relief,
Commitment of mentally ill person. *Governor. Commissioner of Mental Health.*

Alleged failure of certain State officials, including a District Court judge,
two court clerks, and a court psychiatrist, to comply with an established
statutory procedure before involuntarily committing an individual to a
hospital gave rise to no Federal civil rights claim under 42 U.S.C.
§ 1983 (1982) on the part of the person committed, inasmuch as State
statutes and court rules, which were not alleged to be constitutionally
flawed, allowed him an opportunity for postcommitment review suffi-
cient to satisfy Federal due process standards as articulated in *Parratt
v. Taylor,* 451 U.S. 527 (1981). [122-130]

Alleged failure of certain State officials, including a District Court judge,
two court clerks, and a court psychiatrist, to comply with an established
statutory procedure before involuntarily committing an individual to a
hospital did not, in the circumstances, provide any basis for a claim that
the person committed had been denied substantive due process rights
secured him by the United States Constitution. [130-131]

A plaintiff's allegation that proceedings leading to his involuntary commit-
ment to a hospital pursuant to court order did not comply with the
procedure established by G. L. c. 123, § 12, and, consequently, violated
his rights under the Fourth Amendment to the United States Constitution,
failed to state a claim for relief, where the plaintiff alleged nothing that

---

[1] We acknowledge the amicus brief filed on behalf of the Center for
Public Representation and the Coalition for the Legal Rights of the Disabled.

[2] William Garbose is sued personally and in his capacity as District Court
judge; Richard J. Rosenwald, personally and as court psychiatrist; James
J. Callahan, as Commissioner of Mental Health; Fuller Memorial Hospital;
John F. Gabriel, personally and as clerk of Marlborough District Court;
Richard J. Durand, personally and as assistant clerk of Marlborough District
Court; Michael S. Dukakis, as Governor of the Commonwealth.

would indicate that his apprehension pursuant to a warrant was an unreasonable seizure of his person. [131]

A District Court judge was absolutely immune from suit for damages resulting from his action in issuing an order of involuntary commitment to a hospital, where the judge's alleged wrongful conduct occurred while he was performing an act permitted by law within his jurisdiction under G. L. c. 123. [132]

On appeal from an order dismissing claims against a court psychiatrist arising from alleged violation of the plaintiff's rights in involuntarily committing him to a hospital, this court remanded the case for a determination whether the psychiatrist was acting pursuant to G. L. c. 123 in advising the plaintiff's commitment, in which event he would be immune under G. L. c. 123, § 22, from suit for damages. [132]

A plaintiff's action against the court psychiatrist who had advised his involuntary commitment to a hospital did not present an occasion for equitable or declaratory relief, where other means were available to obtain review of the order of commitment. [132-133]

Claims against two court clerks arising out of a proceeding leading to the involuntary commitment of the plaintiff pursuant to court order under G. L. c. 123, § 12(e), were properly dismissed where the plaintiff failed to allege any facts indicating that the two clerks engaged in any wrongdoing in the commitment procedure. [133]

A plaintiff who claimed that he had been unlawfully committed to a hospital pursuant to a court order alleged no facts which, if proved, would entitle him to relief against the Governor or the Commissioner of Mental Health. [133-134]

CIVIL ACTION commenced in the Superior Court Department on August 11, 1983.

A motion to dismiss was heard by *Joseph Ford,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*William T. Harty* for the plaintiff.

*Francis G. Chase,* Assistant Attorney General, for the defendants.

*Steven J. Schwartz* & *Robin L. Stolk,* for Center for Public Representation & another, amici curiae, submitted a brief.

LYNCH, J.   Richard W. Temple brought suit in August, 1983, in Superior Court claiming that the proceedings leading to his involuntary commitment in 1980 pursuant to court order under G. L. c. 123, § 12 (*e*) (1984 ed.), violated his rights

under G. L. c. 123 (1984 ed.), 42 U.S.C. § 1983 (1982), and the Fourth and Fourteenth Amendments to the United States Constitution. He alleges furthermore that certain events occurring at the hospital during his temporary commitment violated his rights under State and Federal law. The plaintiff is suing the District Court judge who signed the order of commitment, the court psychiatrist who examined him, two court clerks, Fuller Memorial Hospital (hospital), the Commissioner of Mental Health (Commissioner), and the Governor of the Commonwealth (Governor). He seeks declaratory and injunctive relief, money damages, attorneys' fees, and costs. A Superior Court judge granted the defendants' motion to dismiss,[3] and the plaintiff appealed to the Appeals Court. We transferred the case to this court on our own motion.

The plaintiff argues on several grounds that he has stated claims against the defendants upon which relief can be granted, so that the judge erred in granting the defendants' motion to dismiss under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). First, he contends that the judge, the court psychiatrist, and the two court clerks are not immune from this suit because of the doctrine of judicial immunity. Second, he argues that, even though the Commissioner and the Governor were not in office at the time the cause of action arose, they are nevertheless properly named in their official capacities in this action. He contends that all these defendants, individually and severally, acted under color of Massachusetts law to deprive him of certain rights guaranteed by the United States Constitution and G. L. c. 123. Finally, the plaintiff argues that his release from confinement has not rendered the case moot because of the

---

[3] The defendants argued in their motion to dismiss that the plaintiff had failed to state a claim against them. Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). In their memorandum in support of the motion, the defendants contended that the complaint should be dismissed because of immunity of the court officials and employees and because of lack of personal involvement of the Governor and the Commissioner. The precise basis for the judge's allowance of the motion is not clear from the record. Although the hospital was not a party to the motion to dismiss, the motion judge nevertheless allowed the motion "as to all defendants."

continuing consequences of the involuntary commitment on his ability to pursue his occupation.

We affirm the judgment in part and reverse it in part. We conclude that the judge properly dismissed all claims against the two court clerks, the Commissioner, and the Governor because the plaintiff failed to allege any action by these defendants which deprived him of rights under State or Federal law. Furthermore, we affirm the judge's dismissal of the claims under 42 U.S.C. § 1983 and the United States Constitution against the defendant judge and the court psychiatrist. We reverse the dismissal of the plaintiff's claim that the court psychiatrist acted in violation of his rights under G. L. c. 123. We conclude that the gravamen of the plaintiff's complaint is that the judge and the psychiatrist failed to follow an otherwise proper State commitment procedure under G. L. c. 123, § 12 (1984 ed.). The judge, however, is immune from liability under c. 123 because the alleged acts were committed in a case concededly within his jurisdiction. On remand, the plaintiff may seek relief under G. L. c. 123, § 22 (1984 ed.), against the psychiatrist, and may file a motion pursuant to Mass. R. Civ. P. 60 (b), 365 Mass. 828 (1974), for relief from the order of commitment. Since we conclude that redress under G. L. c. 123 provides an adequate postdeprivation remedy for the alleged violation of due process rights, it was appropriate to dismiss the claims under § 1983. See *Parratt* v. *Taylor,* 451 U.S. 527 (1981); *Hudson* v. *Palmer,* 468 U.S. 517 (1984).[4]

The plaintiff alleges in his complaint that on the morning of August 13, 1980, he was apprehended by the Marlborough police at his residence in Marlborough pursuant to a warrant of apprehension issued by a District Court judge on August 12, 1980, under G. L. c. 123, § 10 (*a*) (1984 ed.).[5] The plaintiff

---

[4] Since the hospital was not a party to the motion to dismiss and has not argued on appeal in support of the judge's blanket dismissal of all claims, we rule that the claims against the hospital must be reinstated on remand. A judge may dismiss the claims against the hospital only in response to an appropriate motion. Mass. R. Civ. P. 12 (b), (d).

[5] The warrant of apprehension was issued by a different District Court judge on the application of Richard S. Temple, the plaintiff's father. That judge is not a defendant in this action.

was then transported to the Marlborough District Court where he was taken to the office of the defendant court psychiatrist, who interviewed him for approximately ten minutes. The plaintiff alleges that the psychiatrist denied his requests during the interview for voluntary hospitalization, an independent medical evaluation, representation by an attorney, and a hearing before a judge. After the interview, the plaintiff waited in the corridor for approximately thirty minutes and then was taken by two men to the hospital pursuant to an "Order of Commitment," No. 4-1980, signed by the defendant District Court judge. The plaintiff was detained at the hospital until his release on August 23, 1980.

The plaintiff alleges that while he was at Marlborough District Court the only person with whom he dealt in an official capacity was the court psychiatrist. The plaintiff asserts that in addition to the denial of the requests set forth above, this defendant prepared a psychiatric report which contains errors, inaccuracies, and factual omissions, is based primarily on hearsay, and presents no diagnosis or support of its conclusion.[6] The plaintiff alleges furthermore that "[a]t no time prior to or during his commitment was Plaintiff provided with notice of such proceedings nor was he advised of a right to legal counsel, nor was he given or allowed benefit of legal counsel, nor did he see a clerk of the Court, nor did he see or appear before any justice of the Court, nor was he given any hearing before the Court, nor was he permitted an independent medical evaluation, nor was he permitted voluntary admission to a hospital."

The plaintiff also alleges that, as a result of the involuntary commitment, he has suffered physical and emotional damage, and the stigma of an involuntary, court-ordered commitment, and is now unable to pass his flight physical which is a prerequisite to continuing to hold a commercial pilot's license.[7]

---

[6] The allegedly erroneous psychiatric report is not part of the record appendix filed with this court.

[7] The plaintiff argues in his brief that he has been barred by the involuntary commitment from his normal employment, aircraft sales, and cannot fly airplanes even though he holds a commercial pilot's license. He asserts that had he been allowed a voluntary hospitalization, these disabilities would not exist.

In addition, he claims that certain damage was inflicted upon him by the hospital during his detention. Since we decline to consider whether the plaintiff has stated a claim against the hospital, it is unnecessary to set forth the elements of this claim.

1. *Claims under Federal law.* The plaintiff alleges under 42 U.S.C. § 1983 that the defendants deprived him of certain rights under the Fourth and Fourteenth Amendments. He claims that he was denied due process of law in the procedure leading to his involuntary commitment under G. L. c. 123, § 12, and seeks declaratory and injunctive relief and damages.[8] The defendants have argued on appeal in support of the dismissal that the judge, the court psychiatrist, and the court clerks are immune from liability in this case because of the doctrine of judicial immunity. We conclude that it is not necessary to consider whether the doctrine of immunity bars any or all of the claims under Federal law against the defendants. We are persuaded that the plaintiff's allegations do not support a claim for relief under § 1983 and the United States Constitution, so we affirm the judge's dismissal of all claims under Federal law.

a. *Fourteenth Amendment due process.* "[I]n any § 1983 action the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States."[9] *Parratt* v. *Taylor,* 451 U.S. 527, 535 (1981). The plaintiff alleges that the defendants vi-

---

[8] The plaintiff alleges in his complaint, without further explanation, that the "actions of the Defendants violate[d] Plaintiff's rights under the Fourth and Fourteenth Amendments to the Constitution of the United States." We assume, for purposes of this decision, that the plaintiff claims that the defendants violated his Fourteenth Amendment due process rights and his Fourth Amendment right to be free from unreasonable searches and seizures.

[9] Title 42 U.S.C. § 1983 (1982) provides, in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

olated his rights under the Fourteenth Amendment.[10] He apparently claims therefore that the defendants deprived him of his liberty without due process of law. See note 8, *supra*. We conclude that, even assuming that one or more of the defendants acted under color of State law to deprive the plaintiff of his liberty, see *Parratt* v. *Taylor, supra*; *Monroe* v. *Pape,* 365 U.S. 167 (1961), the deprivation did not occur "without due process of law" as that term has been interpreted in cases brought under § 1983. See *Hudson* v. *Palmer,* 468 U.S. 517 (1984); *Parratt* v. *Taylor, supra.* The manner in which the plaintiff was allegedly committed was not authorized by an established State procedure, because he was not afforded the option of voluntary admission, so that the Commonwealth could not have provided "due process" prior to the deprivation of liberty. Cf. *Parratt* v. *Taylor, supra* at 538-539. In this case, the postdeprivation remedy provided by State law is adequate to satisfy the due process clause. *Id.* at 538-541.

In *Parratt* v. *Taylor, supra,* the United States Supreme Court first recognized that a claim that State officers acted under color of State law to deprive an individual of his property does not necessarily rise to the level of a claim under § 1983 that the officers deprived the individual of due process of law. "It seems to us that there is an important difference between a challenge to an established state procedure as lacking in due process and a property damage claim arising out of the misconduct of state officers. In the former situation the facts satisfy the most literal reading of the Fourteenth Amendment's prohibition against 'State' deprivations of property; in the latter situation, however, even though there is action 'under color of' state law sufficient to bring the amendment into play, the state action is not necessarily complete. . . . [T]he existence of an adequate state remedy to redress property damage inflicted by state officers avoids the conclusion that there has been any

---

[10] The Fourteenth Amendment provides, in relevant part: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

constitutional deprivation of property without due process of law within the meaning of the Fourteenth Amendment." *Parratt* v. *Taylor,* 451 U.S. 527, 542 (1981), quoting with approval *Bonner* v. *Coughlin,* 517 F.2d 1311, 1319 (7th Cir. 1975), modified en banc, 545 F.2d 565 (7th Cir. 1976), cert. denied, 435 U.S. 932 (1978). Cf. *Ingraham* v. *Wright,* 430 U.S. 651, 682 (1977). In *Parratt,* the Court concluded that the negligent deprivation of property under color of State law "occurred as a result of the unauthorized failure of agents of the State to follow established state procedure." *Parratt* v. *Taylor, supra* at 543. "Moreover, the State . . . has provided . . . the means by which [the plaintiff] can receive redress for the depriva-tion. . . . Although the state remedies may not provide the [plaintiff] with all the relief which may have been available if he could have proceeded under § 1983, that does not mean that the state remedies are not adequate to satisfy the require-ments of due process. The remedies provided could have fully compensated the [plaintiff] for the property loss he suffered, and we hold that they are sufficient to satisfy the requirements of due process." *Id.* at 543-544.

Although *Parratt* is "limited by its facts to negligent depri-vations of property," *Hudson* v. *Palmer, supra* at 533, the Supreme Court has extended its reasoning to intentional depri-vations of property by a State employee. *Id.* at 533-535. The Supreme Court has not yet ruled as to whether *Parratt* also applies to bar a § 1983 claim of deprivation of liberty without due process. The Court's decision in *Ingraham* v. *Wright,* 430 U.S. 651 (1977), however, has provided some guidance on this issue. In *Ingraham,* the Supreme Court ruled that the postdeprivation process satisfied the Fourteenth Amendment so that it dismissed a claim that corporal punishment by teachers deprived students of their liberty without due process of law. The Court found "that corporal punishment in public schools implicates a constitutionally protected liberty interest, but [held] that the traditional common-law remedies are fully adequate to afford due process." *Id.* at 672.

The lower Federal courts are divided on how *Parratt* is to be applied. Many courts see no distinction between *Parratt* and

§ 1983 actions involving nonproperty interests. See, e.g., *Daniels* v. *Williams,* 720 F.2d 792, 795-797 (4th Cir. 1983) (claiming personal injury resulting from State official's negligence was deprivation of protected liberty interest); *Haygood* v. *Younger,* 718 F.2d 1472, 1479-1480 (9th Cir. 1983) (incarceration of inmate beyond term of imposed sentence); *State Bank* v. *Camic,* 712 F.2d 1140, 1147 (7th Cir. 1983) (jail suicide), cert. denied, 464 U.S. 995 (1983); *King* v. *Pace,* 575 F. Supp. 1385, 1388 (D. Mass. 1983) (claiming negligence in serving alcoholic beverages to minors resulted in their deaths); *Juncker* v. *Tinney,* 549 F. Supp. 574, 576 (D. Md. 1982) (claiming burn caused by coverless prison radiator was negligent deprivation of liberty interest); *Meshkov* v. *Abington Township,* 517 F. Supp. 1280, 1284-1286 (E.D. Pa. 1981) (jail suicide). See generally Smolla, The Displacement of Federal Due Process Claims by State Tort Remedies: *Parratt* v. *Taylor* and *Logan* v. *Zimmerman Brush Co.,* 1982 U. Ill. L. Rev. 831, 850; Comment, *Parratt* v. *Taylor*: Don't Make A Federal Case Out Of It, 63 B.U.L. Rev. 1187, 1209-1215 (1983). The controlling inquiry to these courts is not the nature of the interest, but whether the State was in a position to provide predeprivation process and whether it supplies adequate postdeprivation process. See *Daniels* v. *Williams, supra* at 795; *Haygood* v. *Younger, supra* at 1480; *Juncker* v. *Tinney, supra* at 576.

Other Federal courts, however, have distinguished *Ingraham* and have held that *Parratt* is inapplicable to deprivations of nonproperty interests. See, e.g., *Wakinekona* v. *Olim,* 664 F.2d 708, 715 (9th Cir. 1981) (prisoner transfer may involve deprivation of liberty), rev'd on other grounds, 461 U.S. 238 (1983) (finding no constitutionally protected due process right); *Spell* v. *McDaniel,* 591 F. Supp. 1090, 1104-1106 (E.D.N.C. 1984) (victim of police beating claimed deprivation of liberty); *Anton* v. *Lehpamer,* 584 F. Supp. 1382, 1385-1386 (N.D. Ill. 1984) (use of excessive force in making arrest may involve deprivation of liberty); *Frost* v. *Honolulu,* 584 F. Supp. 356, 358-361 (D. Hawaii 1984) (victim of police beating claimed deprivation of liberty); *Roman* v. *Richmond,* 570 F.Supp. 1554,

1555-1556 (N.D. Cal. 1983) (person shot to death by police officers); *Holmes* v. *Ward,* 566 F. Supp. 863, 865 (E.D.N.Y. 1983) (pretrial detainee injured due to inadequate "lockout" procedures). Many of the courts that have refused to apply *Parratt* to cases involving the deprivation of liberty or life have refused to do so because they have found that the deprivations have implicated substantive due process rights. See, e.g., *Bell* v. *Milwaukee,* 746 F.2d 1205, 1238-1239 (7th Cir. 1984); *Wolf-Lillie* v. *Sonquist,* 699 F.2d 864, 871-872 (7th Cir. 1983); *Spell* v. *McDaniel, supra* at 1102; *Anton* v. *Lehpamer, supra* at 1386; *Frost* v. *Honolulu, supra* at 360-361. Others have found support for their refusal to apply *Parratt* in their conclusion that the State remedy was inadequate to redress the injuries sustained. See, e.g., *Herrera* v. *Valentine,* 653 F.2d 1220, 1224 (8th Cir. 1981); *Roman* v. *Richmond, supra* at 1556.

We adopt the view that *Parratt* applies to claims of deprivation of liberty, with the result that the plaintiff's Fourteenth Amendment due process claims fail. This is so because remedies available under State law satisfy the requirements imposed by *Parratt.* The plaintiff contends that the defendants did not accord to him certain rights to which he was entitled under G. L. c. 123, § 12.[11] Section 12 *(c)* provides in relevant part: "No person shall be admitted to a facility under the provisions of this section unless he . . . is given an opportunity to apply for voluntary admission under the provisions of [§ 10 *(a)*] and unless he . . . has been informed (1) that he has a right

---

[11] General Laws c. 123, § 12 *(e),* provides: "Any person may make application to a district court justice for a ten-day commitment to a facility of a mentally ill person; whom the failure to confine would cause a likelihood of serious harm. After hearing such evidence as he may consider sufficient, a district court justice may issue a warrant for the apprehension and appearance before him of the alleged mentally ill person, if in his judgment the condition or conduct of such person makes such action necessary or proper. Following apprehension, the court shall have the person examined by a physician designated to have the authority to admit to a facility in accordance with the regulations of the department. If said physician reports that failure to hospitalize the person would create a likelihood of serious harm by reason of mental illness, the court may order the person committed to a facility for a period not to exceed ten days, but the superintendent may discharge him at any time within the ten-day period."

to such voluntary admission, and (2) that the period of hospitalization under the provisions of this section cannot exceed ten days."[12]  If the plaintiff had been given the opportunity to choose voluntary admission, his application could not have been accepted until he was afforded the opportunity to consult with an attorney. G. L. c. 123, § 10 (*a*). Clearly, he cannot be deprived of the opportunity afforded under the statute for consultation with an attorney by a further deprivation of the right to elect voluntary admission, which is also granted by the statute.

The plaintiff had an adequate remedy under State law to raise the issue that his commitment was in violation of the statute. He could have appealed his commitment under G. L. c. 123, § 9 (*a*) (1984 ed.), which provides: "Matters of law arising in commitment hearings or incompetency for trial proceedings in a district court may be reviewed by the appellate division of the district courts in the same manner as in civil cases generally." Furthermore, he could have sought immediate release from commitment by means of a petition for writ of habeas corpus under G. L. c. 248, § 1 (1984 ed.). Finally, he could have moved under Mass. R. Civ. P. 60 (b) for relief from the order of commitment issued by the District Court judge.[13]  Since the judge and the court psychiatrist were alleg-

---

[12] General Laws c. 123, § 10 (*a*), provides, in relevant part: "Pursuant to departmental regulations on admission procedures, the superintendent may receive and retain on a voluntary basis any person providing the person is in need of care and treatment and providing the admitting facility is suitable for such care and treatment. The application may be made (1) by a person who has attained the age of sixteen . . . . Prior to accepting an application for voluntary admission, the superintendent shall afford the person making the application the opportunity for consultation with an attorney, or with a person who is working under the supervision of an attorney, concerning the legal effect of a voluntary admission. . . ." See 104 Code Mass. Regs. § 3.10 (5) (1978) (civil rights of patients).

[13] Rule 60 (b) provides, in relevant part: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect . . . or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order or proceeding was entered or

edly acting in violation of an established State procedure under G. L. c. 123, it would have been impossible for the Commonwealth to have provided a predeprivation hearing. In such a situation, all that *Parratt* requires is that the postdeprivation remedy be adequate. "[A] state cannot be held to have violated due process requirements when it has made procedural protection[s] available and the plaintiff has simply refused to avail himself of them." *Dusanek* v. *Hannon,* 677 F.2d 538, 543 (7th Cir.), cert. denied, 459 U.S. 1017 (1982).

The State remedies may be adequate even though the plaintiff may not be entitled to recover damages. "Although the state remedies may not provide the respondent with all the relief which may have been available if he could have proceeded under § 1983, that does not mean that the state remedies are not adequate to satisfy the requirements of due process." *Parratt* v. *Taylor,* 451 U.S. 527, 544 (1981). Thus, in a case where the liberty interest affected was injury to the person, the Court of Appeals for the Fourth Circuit has stated: "*Parratt* does not require that a plaintiff actually receive a remedy for the deprivation of his interest. Instead, *Parratt* holds that procedural due process is satisfied if, in cases where a predeprivation hearing is impractical, the state provides a means by which the plaintiff can be compensated for his loss. In other words, under *Parratt* the requirements of due process are satisfied by the provision of a hearing before a tribunal with the power to grant a remedy." *Daniels* v. *Williams,* 720 F.2d 792, 797 (4th Cir. 1983). Accord *Groves* v. *Cox,* 559 F. Supp. 772, 775-777 (E.D. Va. 1983). In *Daniels,* the court held that the result would not be affected if the plaintiff was barred from any recovery by the doctrine of sovereign immunity because "[due process] does not entitle 'every civil litigant to a hearing on the merits of every case.' (citation omitted). Rather, due process requires 'an *opportunity* . . . granted at a meaningful time and in a meaningful manner for [a] hearing appropriate to

taken. . . . This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court."

the nature of the case . . . .'" *Id.* at 798, quoting *Logan* v. *Zimmerman Brush Co.*, 455 U.S. 422, 437 (1982). It follows, therefore, that the result is unaffected in this case if the plaintiff is barred from recovery by the doctrine of judicial immunity.

That doctrine insulates the judge from liability for acts committed in the exercise of his jurisdiction. See *DeLoach* v. *Tracy,* 352 Mass. 135, 136 (1967); *Joyce* v. *Hickey,* 337 Mass. 118, 121-122 (1958); *Allard* v. *Estes,* 292 Mass. 187, 189-190 (1935). Furthermore, in the absence of bad faith or malice, psychiatrists who sign commitment certificates have traditionally been immune from liability for damages under State law. See *Mezullo* v. *Maletz,* 331 Mass. 233 (1954); *Niven* v. *Boland,* 177 Mass. 11, 14 (1900) (physicians who signed commitment certificate exempt from civil liability). Cf. *Karjavainen* v. *Buswell,* 289 Mass. 419, 426-427 (1935). The psychiatrist may, however, be held liable for damages under G. L. c. 123, § 22.[14] Therefore, even if we assume that the plaintiff would not be barred in the Federal courts from an award of damages because of a similar doctrine of judicial immunity, his remedies under State law are adequate so that it is proper to dismiss the claims under § 1983. Moreover, it is unlikely that the plaintiff could recover damages under Federal law even if he otherwise stated a claim under § 1983. The Federal doctrine of immunity, as well, generally bars recovery of damages under § 1983 against judges and individuals acting in a quasi judicial or other official capacity. See *Stump* v. *Sparkman,* 435 U.S. 349, 355-357 (1978) (judge immune from damages liability unless he acted in "clear absence of all jurisdiction"); *Gomez* v. *Toledo,* 446 U.S. 635, 639 (1980) ("public officers are entitled to a qualified immunity from damages liability under § 1983); *O'Connor* v. *Donaldson,* 422 U.S. 563 (1975) (superintendent of State hospital has qualified immunity); *Scheuer* v. *Rhodes,* 416 U.S. 232 (1974) (Governor and other State executive officials have

[14] General Laws c. 123, § 22, provides in relevant part: "Physicians, qualified psychologists and police officers shall be immune from civil suit for damages for restraining, transporting, applying for the admission of or admitting any person to a facility . . . providing said physician, qualified psychologist or police officer acts pursuant to the provisions of this chapter."

qualified immunity); *Pierson* v. *Ray,* 386 U.S. 547, 553-555 (1967) (§ 1983 did not abolish the "settled principle of law" of "the immunity of judges from liability for damages for acts committed within their judicial jurisdiction"); *Slotnick* v. *Garfinkle,* 632 F.2d 163, 166 (1st Cir. 1980) ("Judicial immunity extends . . . to those who carry out the orders of judges," including court clerks); *Downs* v. *Sawtelle,* 574 F.2d 1, 10-12 (1st Cir.) (qualified immunity of physician), cert. denied, 439 U.S. 910 (1978). Cf. *Pulliam* v. *Allen,* 466 U.S. 522, 539-543 (1984) (judicial immunity is not a bar to declaratory and injunctive relief under § 1983). See also *Juncker* v. *Tinney,* 549 F. Supp. 574 (D. Md. 1982) (State's qualified immunity doctrine did not render State remedy inadequate under *Parratt*).

Unless the plaintiff has alleged sufficient facts to constitute a substantive due process claim, we must dismiss his claim that the defendants violated his rights under the Fourteenth Amendment. Here, the plaintiff alleges merely that the defendants failed to comply with an established, statutory procedure. This is not a case where the plaintiff alleges facts indicating that the procedure itself is flawed. Cf. *Holmes* v. *Ward,* 566 F. Supp. 863, 866 (E.D.N.Y. 1983). Furthermore, this is not a case where the defendants' alleged conduct is so egregious that "it 'shocks the conscience' or is otherwise offensive to the 'concept of ordered liberty.'" *Frost* v. *Honolulu,* 584 F. Supp. 356, 363 (D. Hawaii 1984), quoting *Rochin* v. *California,* 342 U.S. 165, 169-172 (1952). The plaintiff was allegedly committed after application was made by his father pursuant to G. L. c. 123, § 12 (*e*). The plaintiff was apprehended pursuant to a warrant of apprehension, whose issuance he does not challenge. He was interviewed by a court psychiatrist and was committed temporarily pursuant to an order of commitment signed by a District Court judge. This sequence of events on its face appears to comply with the procedure outlined in G. L. c. 123, § 12. The plaintiff alleges that he was deprived of the right to elect voluntary admission under G. L. c. 123, §§ 12 (*c*) and 10. Even if the defendants improperly denied him this right and the opportunity to consult with counsel, a brief commitment upon request of a close family

member and after a psychiatric evaluation is not so egregious that it "shocks the conscience" or otherwise constitutes a basis for a substantive due process claim.

b. *Fourth Amendment seizure of person.* The plaintiff also alleges that the procedure leading to his involuntary commitment violated his rights under the Fourth Amendment. Even if we assume that what we have previously said does not dispose of the Fourth Amendment claim, his case is not aided by this claim.[15] Although the Fourth Amendment is more commonly viewed as prohibiting illegal searches for and seizures of evidence, it also protects against unreasonable seizures of persons. See *Terry* v. *Ohio,* 392 U.S. 1, 16 (1968). See generally 2 W. R. LaFave, Search and Seizure § 5.1 (1978 & Supp. 1985). The plaintiff apparently alleges that his apprehension and subsequent temporary commitment constituted an unreasonable seizure of his person. It is clear, on the allegations of the complaint, that persons acting under color of State law deprived the plaintiff of his liberty between the time of his apprehension on August 13, 1980, and his release from commitment on August 23, 1980. The plaintiff alleges no grounds that would indicate that his apprehension pursuant to the warrant was unreasonable. The warrant was issued by a District Court judge after the plaintiff's father had made an application for a ten-day commitment. The plaintiff alleges no facts which would show that the warrant was improperly issued. Furthermore, the plaintiff alleges no facts which would indicate that his subsequent temporary commitment was unreasonable. He alleges only that the manner in which he was committed was improper because it was not in compliance with the procedure established by G. L. c. 123, § 12. The plaintiff's short commitment was not unreasonable in light of the manifest intent of preventing serious bodily harm by mentally disturbed individuals to themselves or others.

---

[15] The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

We conclude that the judge properly dismissed all claims under Federal law. We turn now to the question whether any of the plaintiff's claims under State law survive the defendants' motion to dismiss.

2. *Claims under State law.* Only the claim under G. L. c. 123 against the court psychiatrist survives the defendants' motion to dismiss. The Superior Court judge properly dismissed the claims against the judge, the court clerks, the Commissioner, and the Governor. As to these defendants, the plaintiff has failed to state a claim upon which relief can be granted. See Mass. R. Civ. P. 12 (b) (6).

a. *The judge and the psychiatrist.* We conclude that the judge is absolutely immune from suit for damages for his actions in issuing the order of commitment. The conduct which the plaintiff alleges was wrongful occurred while the judge was performing an act permitted by law within his jurisdiction under G. L. c. 123. See *DeLoach* v. *Tracy,* 352 Mass. 135, 136 (1967). See also *Stump* v. *Sparkman,* 435 U.S. 349, 352-355 (1978); *Bradley* v. *Fisher,* 80 U.S. (13 Wall.) 335, 352 (1871); *Haley* v. *Troy,* 338 F. Supp. 794 (D. Mass. 1972). The psychiatrist is immune from suit for damages under G. L. c. 123, § 22, if he acted pursuant to the provisions of G. L. c. 123 in advising that the plaintiff be temporarily committed. We do not decide whether G. L. c. 123, § 22, enacted in 1970, was intended to impose a different standard of liability from that enunciated by this court under an earlier version of the statute. See *Belger* v. *Arnot,* 344 Mass. 679, 684-685 (1962); *Mezullo* v. *Maletz,* 331 Mass. 233, 236-237 (1954); *Karjavainen* v. *Buswell,* 289 Mass. 419, 429 (1935); *Niven* v. *Boland,* 177 Mass. 11, 14 (1900). Cf. *Rogers* v. *Okin,* 478 F. Supp. 1342, 1388 (D. Mass. 1979), aff'd in part, rev'd in part, 634 F.2d 650 (1st Cir. 1980), vacated and remanded sub nom. *Mills* v. *Rogers,* 457 U.S. 291 (1982). Before that question need be decided, there must be a determination whether the psychiatrist was acting pursuant to the provisions of G. L. c. 123.

Because of the plaintiff's failure to exercise his right of appeal under G. L. c. 123, § 9 (a), this is not an appropriate case

for granting declaratory and equitable relief, especially where alternative remedies are still available to him. See *Jacoby* v. *Babcock Artificial Kidney Center, Inc.*, 364 Mass. 561, 564 (1974) ("It is generally acknowledged that procedures for declaratory relief cannot be used as substitutes for appeal"). Therefore, we dismiss the plaintiff's claims under State law for declaratory and injunctive relief against all State defendants.

Nevertheless, if it is found that the plaintiff was denied his right to choose voluntary admission, he may be entitled to an order making appropriate changes in his commitment record. On remand, the judge may, in his discretion, grant this relief in response to an appropriate motion by the plaintiff under Mass. R. Civ. P. 60 (b) for relief from the order of commitment.

b. *The court clerks.* The plaintiff has failed to allege any facts indicating that the two court clerks engaged in any wrongdoing in the procedure leading to his temporary commitment. The judge below properly dismissed all claims against these two defendants. Cf. *Slotnick* v. *Staviskey*, 560 F.2d 31 (1st Cir. 1977), cert. denied, 434 U.S. 1077 (1978). Court clerks enjoy qualified immunity from suit and are absolutely immune for their conduct when acting at a judge's direction. See *Slotnick* v. *Garfinkle*, 632 F.2d 163, 166 (1st Cir. 1980); *Williams* v. *Wood*, 612 F.2d 982, 984-985 (5th Cir. 1980); *Sullivan* v. *Kelleher*, 405 F.2d 486, 487 (1st Cir. 1968). Cf. *Pruner* v. *Clerk of the Superior Court in the County of Norfolk*, 382 Mass. 309, 313-315 (1981) (discussing immunity of court clerks from liability for negligence under Massachusetts Tort Claims Act). See also *Royal Tool & Gauge Corp.* v. *Clerk of the Courts for the County of Hampden*, 326 Mass. 390, 392 (1950) (remedy for clerk's failure to comply with law in preparing record in pending case was by motion, not by independent petition for writ of mandamus).

c. *The Commissioner and the Governor.* The named Commissioner and the named Governor did not hold their offices between August 13, 1980, the date on which the judge signed the order of commitment, and August 23, 1980, the date of the plaintiff's release from temporary commitment. The plaintiff has nevertheless named them in their official capacities as

defendants instead of the Commissioner and the Governor who held office in 1980. See Mass. R. Civ. P. 25 (d), 365 Mass. 772 (1974). We conclude that the plaintiff has failed to state a claim against either the Commissioner or the Governor. They bear no direct or vicarious liability for the wrongdoing alleged by the plaintiff in the procedure leading to his involuntary commitment or in the course of events during the plaintiff's commitment at the hospital. See *Perez* v. *Boston Hous. Auth.,* 368 Mass. 333, 336-341, appeal dismissed for lack of Federal question sub nom. *Perez* v. *Bateman,* 423 U.S. 1009 (1975); *Westinghouse Broadcasting Co.* v. *Dukakis,* 409 F. Supp. 895, 896 (D. Mass. 1976). Compare *Bradley* v. *Commissioner of Mental Health,* 386 Mass. 363, 366 n.3 (1982); *Nason* v. *Commissioner of Mental Health,* 351 Mass. 94, 96-97 (1966). See also *Woodbridge* v. *Worcester State Hosp.,* 384 Mass. 38, 41-45 (1981). The plaintiff has failed to allege sufficient facts to warrant a recovery against either of these defendants, so we affirm the dismissal of all claims against them.

*Conclusion.* We affirm the judgment of the Superior Court in so far as it dismisses the claims under Federal law against all defendants, except the hospital, which was neither a party to the motion to dismiss nor a party to this appeal. We also affirm the dismissal of the claims under State law against the judge, the court clerks, the Commissioner, and the Governor. We reverse the judge's dismissal of the claim under G. L. c. 123 against the court psychiatrist. We order that all claims against the hospital be reinstated because they were not properly susceptible to dismissal, since it did not file or join in the motion to dismiss.

*So ordered.*